IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW CARPENTER,<br><br>Defendant. | 4:20CR3068<br><br>FINDINGS, RECOMMENDATION, AND ORDER |

This matter is before the court on Defendant Matthew Carpenter's Motion to Dismiss the criminal complaint. He argues his due process rights have been violated because evidence was destroyed prior to trial. (Filing No. 29). For the reasons set forth below, the motion to dismiss should be denied.

BACKGROUND

After hearing testimony and reviewing the documentary evidence, the undersigned magistrate judge finds the following facts are credible:

On January 25, 2020, Defendant Carpenter was arrested by the Kearney Police Department (KPD) after he was found in a shed that did not belong to him. (Filing No. 36-15). Officers searched the shed and found three baggies with suspected methamphetamine. The baggies were seized and transported to the Kearney Police Department. The officers' pretest of the baggies' contents was presumptively positive for methamphetamine.

The baggies were initially logged into a temporary evidence locker, and they were later logged into KPD's property unit during business hours. (Filing No. 36-16) The evidence was packaged and mailed to the Nebraska State Patrol Crime

Lab by certified mail. (Filing No. 36-16). A log memorializing the chain of custody was kept by the KPD and by the Crime Lab. (Filing No. 36-16; Filing No. 36-22) The Crime Lab tested and stored the evidence according to protocol and then mailed the package back to the KPD in May 2020. The Crime Lab determined that the combined concentrations for the contents of the baggies was "at least 52 grams methamphetamine actual." (Filing No. 36-19).

Deputy Buffalo County Attorney Michael Mefferd filed drug possession charges against Defendant Carpenter in the District Court of Buffalo County, Nebraska. On July 24, 2020, Defendant was indicted by a federal grand jury in the District of Nebraska. The indictment alleges Defendant knowingly and intentionally possessed with intent to distribute 50 grams or more of methamphetamine actual, a Schedule II controlled substance, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1). (Filing No. 1).

On August 3, 2020, KPD Investigator Douglas McCarty checked out the drugs for one day to conduct fingerprint analysis. (Filing No. 36-24). No comparable prints were found on the baggies and the evidence was returned to the property unit and retained according to protocol. The chain of custody was maintained according to protocol from the time the evidence was seized until it was released to the Crime Lab and upon return from the Crime Lab to the KPD.

State charges were pending in the District Court for Buffalo County until August 3, 2020, when Mefferd dismissed the state case after a federal indictment was filed in this court. (Filing No. 36-38; Filing No. 36-23 at CM/ECF pp. 2-3). On August 7, 2020, KPD Investigator Jason Garrels contacted Mefferd by email to inform him the federal case had been filed so the Buffalo County case could be dismissed. (Filing No. 36-37). Mefferd informed Garrels that the state case had already been dismissed. (Filing No. 36-37).

2

After a state criminal case is closed, the Kearney property department sends a property release form to the County Attorney's office for authorization to release or destroy evidence stored by the department. A signature on the form indicates to the property department that the evidence is no longer needed by the County Attorney's Office for criminal prosecution. Where the criminal charges are being federally prosecuted, the local agency is responsible for storing the evidence of the crime. In this case, the KPD property unit was required to store the evidence for Carpenter's federal case until its destruction was authorized.

On September 9, 2020, a Property Release Form was signed and dated by Mefferd. He drew a line through boxes next to listed evidence, thereby authorizing the destruction or release of each of the items. His notations indicated the three bags of methamphetamine seized during Carpenter's arrest could be destroyed. ([Filing No. 36-38](); [Filing No. 36-16 at CM/ECF p. 7]()). Based upon the notations on the Property Release Form Kearney police officers collected evidence authorized to be destroyed and transported it to the local landfill on November 10, 2020. The destroyed evidence included the three baggies of methamphetamine seized from Carpenter on January 25, 2020.

On or about March 24, 2021, Jeff Dowling, supervisor of KPD's property room, became aware of this federal case. In preparing for a meeting with the U.S. Attorney's Office, Dowling reviewed records and determined that the drugs had been destroyed using the procedure that is typically used: The Property Release Form was received, the evidence was pulled from the shelf, the form was placed with the evidence in the drug vault, and then the evidence was destroyed with drugs from other cases in bulk. Prior to that destruction, Defendant had not requested independent testing of the contents within the baggies.

Dowling informed Garrels that the evidence had been destroyed. Dowling provided a list of the property seized, which indicated the baggies had been destroyed "per CA Mefferd." ([Filing No. 36-17](#)). Not all of the evidence seized from Carpenter was destroyed. For example, a digital scale found in Defendant's pocket remains in the KPD property room. Garrels notified the U.S. Attorney assigned to this case that the baggies containing methamphetamine were destroyed. The U.S. Attorney promptly notified Carpenter's attorney in the federal case.

Defendant filed a motion to dismiss the federal indictment on May 3, 2021.

ANALYSIS

Carpenter asserts that "the Indictment against him in this case should be dismissed due to the Government's failure to preserve and the destruction of material and potentially exculpatory evidence of drugs in this drug possession case, violating Mr. Carpenter's due process rights and rendering a criminal trial for Mr. Carpenter fundamentally unfair." ([Filing No. 30 at CM/ECF p. 2](#)). The evidence destroyed in this matter includes all the methamphetamine found and seized during the search of the shed where Carpenter was found on January 25, 2020.

A.   Standard of Review

The court must separately analyze due process claims alleging destruction of exculpatory evidence from those alleging destruction of potentially exculpatory evidence. The government violates a defendant's due process rights when it does not preserve material exculpatory evidence. [United States v. Clark, No. 8:12CR342, 2014 WL 1664965, at *9 (D. Neb. Apr. 22, 2014)](#) ([citing California v. Trombetta, 467 U.S. 479 (1984) 467 U.S. at 488–89](#)); see also [United States v. Wright, 260 F.3d 568, 570 (6th Cir.2001)](#). To satisfy the standard of constitutional materiality, the missing evidence "must both possess an exculpatory value that

4

was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 488–89. When asserting a right to dismissal of charges for violation of due process, if the defendant proves the destroyed or lost evidence was material exculpatory evidence as defined in Trombetta, he need not also prove the government's destruction of the evidence was in bad faith. See Arizona v. Youngblood, 488 U.S. at 57 (1988).

However, when the evidence in question is only potentially useful, as opposed to clearly exculpatory, a criminal defendant who claims destruction of evidence violated his due process rights must prove the police were acting in bad faith when the evidence was destroyed. United States v. Bugh, 701 F.3d 888, 894–95 (8th Cir. 2012) (citing United States v. Houston, 548 F.3d 1151, 1155 (8th Cir.2008) (citing Youngblood, 488 U.S. at 57). The defendant bears the burden of proving bad faith. Bugh, 701 F.3d at 894–95 (citation omitted). Negligent destruction of evidence is insufficient to establish a due process claim. Bugh, 701 F.3d at 894–95 (citing Houston, 548 F.3d at 1155). "[U]nless a defendant can show bad faith on the part of police, failure to preserve potentially useful evidence does not constitute denial of due process of law." United States v. Webster, 625 F.3d 439, 446 (8th Cir. 2010) (citing United States v. Scoggins, 992 F.2d 164, 167 (8th Cir.1993)). Moreover, the evidence must have had apparent exculpatory value, with no comparable exculpatory evidence reasonably available to the defendant. United States v. Malbrough, 922 F.2d 458, 463 (8th Cir.1990) (citing Trombetta, 467 U.S. at 488-89).

    B.    The Destroyed Baggies of Methamphetamine

    1)    Exculpatory Evidence

The initial question is whether the baggies of destroyed drugs were material exculpatory evidence. As explained in United States v. Webster, 625 F.3d 439, 446 (8th Cir. 2010), presentation at trial of drugs seized by law enforcement tends to be inculpatory, not exculpatory. "While there remains a small possibility that further testing of the drugs by [Defendant] would have revealed errors in the government's lab analysis, the Supreme Court has rejected similar arguments as a basis for demonstrating the exculpatory value of destroyed evidence." Id, citing Trombetta, 467 U.S. at 489.

Here, the substances in the baggies tested presumptively positive for methamphetamine in the field; a test result later confirmed by Nebraska's crime lab. Carpenter never requested an opportunity to independently test the substances from the time the indictment was filed in July 2020 until March 2021, when the United States was notified that the baggies had been destroyed. There were no usable prints found on the baggies to prove or disprove who owned them, and like the contents of the baggies, Defendant never asked to independently examine the baggies for fingerprints.

Defendant has failed to show the destroyed baggies of methamphetamine were material exculpatory evidence.

    2)    Potentially Exculpatory Evidence

Carpenter asserts the destroyed baggies of drugs were potentially exculpatory, and that the government's bad faith as evidenced by the following:

6

    a) Only some of the evidence collected in this case was destroyed;

    b) Neither the County Attorney nor the property clerk could recall a similar situation happening, where evidence collected for a State case was destroyed after a Federal Indictment, but prior to trial; and

    c) The evidence was not old, so it was not purged from storage due to an existing property destruction policy.

Carpenter further argues that a showing of recklessness, rather than bad faith, is enough to meet his burden that the destruction of evidence constituted a due process violation.

A showing of recklessness does not support a claim that a defendant's due process rights are violated when potentially exculpatory evidence is destroyed. United States v. Webster, 625 F.3d 439, 446 (8th Cir. 2010). In Webster, the county attorney's office signed off on the destruction of evidence despite notice of a pending and related federal case. The case agent had failed to adequately mark the case file or inform the evidence custodian of the federal case. Webster asserted that the government's storage, handling, and ultimate pretrial destruction of the evidence was reckless and violated his due process rights. The Eighth Circuit disagreed, rejecting "Webster's invitation to impose a lesser standard of culpability on the part of the government." Webster, 625 F.3d at 447. Webster held that since there was no evidence of bad faith on the part of the individuals involved, the government's actions, negligent at most, did not support a finding that destruction of evidence violated the defendant's due process rights.

Carpenter further asserts the government acted in bad faith, as evidenced by law enforcement's choice to destroy only the baggies of drug evidence and not all the evidence seized, the fact that neither the property clerk nor the county

7

attorney could recall a prior similar incident, and the lack of any justification for destroying the evidence due to its age. He argues that these facts, considered cumulatively, prove the baggies were intentionally destroyed. But these same facts could also demonstrate a lack of bad faith. There is no evidence that the Buffalo County Attorney or the KPD make a practice of destroying evidence in criminal cases transferred between State and Federal Court. Moreover, the KPD officers and property department staff maintained the evidence in accordance with department policies and protocols. And while the Property Release Form was signed in September, the drugs were not immediately destroyed; the actual destruction did not occur until November 10, 2020 when, in accordance with its standard procedures, the property department performed a bulk destruction of drug evidence collected from several cases. While the evidence was not particularly old, it was purged from the property room after the closure of the state case.

The destruction of evidence in this case occurred when County Attorney Mefferd signed a Property Release Form indicating that the evidence was no longer needed for a state case against Defendant. At the time the property release form was signed, the state charges had been dismissed and Mefferd was not involved in the federal prosecution. There was no evidence that the methamphetamine baggies were destroyed out of any intent to thwart the legal process or deprive the defendant of due process for a tactical advantage in this federal criminal case. The destruction of property after the dismissal of the state charges, without regard for whether there was a federal case pending was negligent, at worst.[1]

---

[1] Due to the events in this case, the KPD implemented a new policy where, after being notified of a federal case, the property department marks each piece of evidence with a sticker indicating that it is part of a federal case and it should not

8

Upon a review of the evidence presented, Carpenter has failed to prove the baggies of methamphetamine were material exculpatory evidence, and even if considered potentially exculpatory evidence, that anyone acted in bad faith throughout the series of events which resulted in their destruction. Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to dismiss filed by the defendant (Filing No. 29) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **August 23, 2021**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 23rd day of July, 2021.

                                        BY THE COURT:

                                        *s/ Cheryl R. Zwart*
                                        United States Magistrate Judge

---

be destroyed. This after-the-fact response shows the KPD has taken the events of this case seriously, further undercutting the Defendant's allegation that the evidence was destroyed in bad faith.

9